IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DAVID TOPP,

    Plaintiff,

v.                                    Civil No.  20-1822-BAH

JAMES RIVER INSURANCE
COMPANY,

    Defendant.

* * * * * * * * * * * * *

**MEMORANDUM OPINION**

Pending before the Court is Plaintiff's Motion *in Limine* (the "Motion"), which seeks to "preclude discussion and/or evidence" in six categories:

1)    Any evidence of Plaintiff's below left knee amputation;

2)    Any evidence of Plaintiff's right toes amputations;

3)    Any witnesses or evidence of any and all pleadings, court filings, discovery, or related documents of any prior legal actions (civil, domestic, or criminal) involving Plaintiff;

4)    Any evidence regarding any other injuries, illnesses and/or sicknesses for Plaintiff that are not being claimed as damages in this case, including by not limited to: heart disease, end stage renal disease, sleep apnea, gastro-esophageal reflux disease, hypertension, hyperlipidemia, chronic sinusitis, hernia, depression, hepatitis C, pneumonia, and glaucoma;

5)    Any prior automobile accidents or claims for injury of the Plaintiff wherein he suffered head, neck, and back injuries; and

6)    Any evidence regarding Plaintiff's receipt of Social Security Disability Insurance Benefits.

Pl.'s Mot. Lim., ECF 30; Pl.'s Br., ECF 30-1.  Defendant timely filed a Response in Opposition as well as a Supplemental filing to the Response.  Def.'s Opp'n, ECF 34; Def.'s Supp., ECF 35.

Plaintiff then filed a Reply to the Response. Pl.'s Reply, ECF 39. I have reviewed these filings and find that no hearing is necessary at this time. *See* Loc. R. 105.6 (D. Md. 2021).

For the reasons set forth below, Plaintiff's Motion is **GRANTED** as to categories 3 and 6 and **DENIED** as to categories 1, 2, and 5. The Court will reserve ruling on the admissibility of category 4 evidence until the start of trial and after hearing additional argument. Of course, the Court may revisit these rulings at trial depending on the evidence elicited and the context in which the evidence is offered.

### I. Background

David Topp ("Plaintiff") sued James River Insurance Company ("Defendant") for allegedly breaching its contract with Plaintiff to provide underinsured motorist coverage. Compl. 3–4, ECF 2. On August 28, 2018, Plaintiff was driving for the ride-sharing service Uber when he was struck from behind by another vehicle ("Subject Car Accident") and suffered injuries. Pl.'s Br. 1, ECF 30-1. Plaintiff was not at fault for the accident and liability generally will not be an issue at trial. Joint Pretrial Order 3, ECF 31. Plaintiff received the policy maximum of $30,000 from the tortfeasor's insurer. Def.'s Opp'n 4, ECF 34. However, Plaintiff alleges that this sum failed to adequately compensate Plaintiff for his injuries. *Id*.

Plaintiff alleges that the injuries caused by the Subject Car Accident resulted in medical bills of approximately $286,000, plus additional non-economic damages. Joint Pretrial Order 3, ECF 31. Plaintiff sought additional compensation from Defendant, who Plaintiff believes is contractually obligated to provide "underinsured motorist" insurance coverage for Plaintiff. *Id*. Defendant denied Plaintiff's claim. Compl. 4, ECF 2. Defendant contends that Plaintiff's alleged injuries are not causally related to the Subject Car Accident, but rather stem from a fall at a family picnic that occurred days after the Subject Car Accident. Joint Pretrial Order 2–3, ECF 31.

Defendant also contends that Plaintiff's medical conditions, specifically diabetes, put Plaintiff at greater risk of the type of injuries he allegedly suffered from that fall. *Id.* In short, the dispute at trial boils down to causation and damages.

Plaintiff seeks to recoup costs related to the surgery to his right knee to repair a right leg "quadriceps rupture." Pl.'s Reply 2, ECF 39. Plaintiff's expert, Dr. Michael Franchetti, will testify that the quadriceps rupture "is a natural consequence of [Plaintiff's] right knee and thigh injuries sustained in the subject accident." *Id.* Defendant's expert, Dr. Leslie Matthews, will testify that the "motor vehicle accident in which [Plaintiff] was involved" did not contribute the quadriceps injury. Def.'s Opp'n, Ex. E at 2, ECF 34-5. Moreover, Dr. Matthews will also testify that Plaintiff's Type-1 diabetes places Plaintiff "at greater risk for tendinopathy and tender rupture." *Id.* Dr. Matthews opines that Plaintiff was "at risk for tendon injury because of his diabetes and weight, and that [Plaintiff] sustained a spontaneous quadricep tendon rupture as a result[.]" *Id.*

As noted above, Plaintiff has filed a Motion in *Limine* asking the Court to exclude certain categories of evidence. Pl.'s Mot. Lim., ECF 30; Pl.'s Br., ECF 30-1. Plaintiff generally contends that the challenged evidence is "irrelevant" under Federal Rule of Evidence ("FRE") 401[1] and thus, inadmissible under FRE 402.[2] Pl.'s Br. 3, ECF 30-1. In the alternative, Plaintiff claims that the evidence should be excluded pursuant to FRE 403[3] because the probative value of

---

[1] Rule 401 details the "test" for relevant evidence and states that:
   Evidence is relevant if:
   (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and
   (b) the fact is of consequence in determining the action.
Fed. R. Evid. 401.

[2] Rule 402 notes, in pertinent part, that "[i]rrelevant evidence is not admissible." Fed. R. Evid. 402.

[3] Rule 403 holds that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing

3

the evidence is substantially outweighed by its danger to "prejudice the [Plaintiff], confuse[] the issues, mislead[] the jury, and [waste] the Court's time." *Id.* at 6.

Defendant counters that "[e]vidence and testimony regarding (1) Plaintiff's past and present medical history, (2) [Plaintiff's] prior accidents, claims, and lawsuits, and (3) [Plaintiff's] social security disability status is all both highly probative and extremely consequential to the questions of causation and damages, and should be admitted at trial of this matter." Def.'s Opp'n 5, ECF 34.

In reviewing challenges to evidence under FRE 401 and 403, the Court is initially guided by the elements of the cause of action. The parties appear to agree that a breach of contract action requires Plaintiff to establish "the existence of a contractual obligation, a material breach of that contractual obligation, and resulting damages." Pl.'s Br. 3, ECF 30-1. The challenged evidence would be offered as probative of the last of these, specifically the damages suffered by Plaintiff due to the Subject Car Accident. Def.'s Opp'n 4, ECF 34 ("[A]t trial of this matter, Plaintiff is required to present evidence that his damages resulting from the subject occurrence exceed the $30,000.00 that he has already received.") (emphasis removed). Thus, Defendant contends that exclusion is unwarranted because each of the challenged categories of evidence is probative of damages.

The Court will review each challenged category of evidence *seriatim*.

## II. Analysis

### 1. Any Evidence of Plaintiff's Below the Knee Leg Amputation.

---

the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

4

Though the exact details of the procedure are sparse, "[i]n 2012 Plaintiff had diabetic complications which required a below left knee amputation." Pl.'s Br. 2, ECF 30-1. Plaintiff argues that the amputation is irrelevant because "Plaintiff is not making the argument that the [Subject Car Accident] proximately caused his diabetes amputations" and because "Plaintiff's monetary claim for damages against Defendant does not include his medical expenses from his diabetic amputations[.]" *Id.* at 4.

Defendant counters that evidence of the amputation is relevant because "[t]here is a genuine dispute of material fact . . . as to whether the right knee surgery, as well as all of the resulting complications, were causally related to the subject motor vehicle accident" or are solely attributable to an incident occurring a few days later at a family gathering when Plaintiff "stood up [and] heard a pop in his right knee and fell over." Def.'s Opp'n 2–5, ECF 34. Defendant notes that "[i]f Plaintiff attempted to stand up by placing all of his weight on his right leg, due to his below-the-knee left leg amputation, that is certainly relevant to the question of how his right knee injury occurred." *Id.* at 5.

Plaintiff is obviously correct that Plaintiff does not seek recovery for the cost of the amputation. This, however, does not end the inquiry. It is abundantly clear from the submissions of both parties that Plaintiff's diabetes and its degree of severity will be "of consequence in determining the action." Fed. R. Evid. 401(b). Specifically, Defendant will argue – and an expert witness will opine – that Plaintiff's severe diabetes caused Plaintiff's injuries, and that Plaintiff's diabetes was so severe as to require amputation of Plaintiff's lower left leg, have a tendency to make several facts of consequence "more or less probable than [they] would be without [that] evidence[.]" Fed. R. Evid. 401(a). Further, to the extent Plaintiff will claim that the Subject Car Accident resulted in an extreme reduction in his mobility, Defendant will contend that at least

some of Plaintiff's alleged limitations are due to the pre-existing amputation. Def.'s Opp'n 6, ECF 34. Accordingly, the Court finds the proffered evidence to be relevant, as defined in FRE 401.

As to the dangers identified in FRE 403, Plaintiff fails to identify any credible basis to believe that evidence of the leg amputation will "unfairly prejudice" Plaintiff or "waste time." Fed. R. Evid. 403. However, the Court recognizes that there is a slight risk that the jury may be led to speculate as to whether Plaintiff's missing lower limb caused his fall.[4] At minimum, that risk can be mitigated by cross examination of Defendant's expert, as well as through the testimony of Plaintiff's expert. In any event, the Court does not find that the probative value of the evidence is "substantially outweighed" by the risk of "confusion of the issues" or "misleading the jury." Fed. R. Evid. 403. The Court will allow mention of Plaintiff's diabetes-related leg amputation.

### 2. Any evidence of Plaintiff's right toes amputations.

Plaintiff's diabetes also resulted in the amputation of several toes from his right foot in 2012, 2013, and 2016. Pl.'s Br. 2, ECF 30-1. For the same reasons noted above, the Court will permit evidence of Plaintiff's amputated toes. However, the Court notes that Defendant's expert does not appear to be prepared to opine that "the absence of certain toes on Plaintiff's right foot led to balance issues[.]" Def.'s Opp'n 6, ECF 34. Accordingly, as with evidence related to the left leg amputation, the Court will be similarly vigilant in ensuring that evidence of toe amputation is not used improperly to buttress mere speculation as to the cause of Plaintiff's fall.

### 3. Any witnesses or evidence of any and all pleadings, court filings, discovery, or related documents of any prior legal actions (civil, domestic, or criminal) involving Plaintiff.

---

[4] Contrary to Defendant's claim that expert testimony "will necessarily call into question the state and abilities of the left leg," Def. Opp'n 5, ECF 34, Dr. Matthews's brief report makes no mention of the amputation as a possible cause of Plaintiff's fall. *See* Def. Opp'n, Ex. E at 2, ECF 34-5. As such, the Court will be vigilant in ensuring that Defendant's counsel does not overstate the significance of any testimony presented at trial related to Plaintiff's amputation.

The portion of Plaintiff's Motion targeting this category of evidence is arguably moot since Defendant did not offer an opposition to Plaintiff's argument, and, similarly, did not note any exhibits in the Joint Pretrial Order responsive to this category. However, to ensure there is no ambiguity as to the Court's view, the Court generally agrees that the mere fact that Plaintiff may have filed prior lawsuits is irrelevant and, therefore, inadmissible. *See* Fed. R. Evid. 402. Even if marginally probative of a fact of consequence, such evidence would be nonetheless inadmissible under FRE 403 and 404.[5] *See Raysor v. Port Auth. of New York & New Jersey*, 768 F.2d 34, 40 (2d Cir. 1985) ("Raysor's litigiousness may have some slight probative value, but that value is outweighed by the substantial danger of jury bias against the chronic litigant."). Finally, any evidence of prior criminal proceedings involving Plaintiff (or any witness) would be governed by FRE 609, and no party has expressed an intention to impeach any witness by evidence of a criminal conviction. Accordingly, the Court will not permit mention of Plaintiff's prior lawsuits.

> **4. Any evidence regarding any other injuries, illnesses and/or sicknesses for the Plaintiff that are not being claimed as damages in this case, including but not limited to, heart disease, end stage renal disease, sleep apnea, gastro-esophageal reflux disease, hypertension, hyperlipidemia, chronic sinusitis, hernia, depression, hepatitis C, pneumonia, and glaucoma.**

Plaintiff argues that, aside from diabetes, there is "no evidence of any kind that any other alleged illness, sickness[,] and/or injury has had any effect on the Plaintiff with regard to the injuries claimed in the case." Pl.'s Mot. Lim. 2, ECF 30. This statement is not challenged by Defendant. However, Defendant notes that Plaintiff has "alleged that as a direct result of the subject motor vehicle accident, [Plaintiff] has 'suffered… loss of enjoyment of life.'" Def.'s Opp'n 6, ECF 34 (citing Compl. ¶ 11, ECF 2). Defendant contends that Plaintiff's "numerous

---

[5] Subject to numerous exceptions, FRE 404 holds that "[e]vidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait." Fed. R. Evid. 404.

serious medical conditions are most certainly relevant to the questions of what Plaintiff's baseline enjoyment of life was prior to the subject motor vehicle accident, and the impact, if any, that any causally related injuries had on same." *Id.*

Plaintiff's quality of life before the accident is unquestionably relevant to a jury's assessment of how Plaintiff's quality of life was impacted by the Subject Car Accident. Plaintiff's prior health conditions are generally relevant to such inquiry. However, the Court is mindful of the fact that evidence of the symptoms *associated* with those health conditions (or their treatment) experienced by Plaintiff – not the conditions themselves – are probative of Plaintiff's pre-accident quality of life. This is particularly true where no expert witness has been noted by the Defendant to explain the relationship between Plaintiff's pre-accident health conditions and Plaintiff's quality of life. Similarly, no expert will opine on whether these conditions are likely to result in a shorter life expectancy for Plaintiff. *See* Pl.'s Reply 4, ECF 39 ("Moreover, even if relevant as to Plaintiff's life expectancy, there is no medical expert opinion or testimony regarding this issue, and so it must be kept from the jury."); *see also* Ct.'s Final Jury Instr. No. 25 (Morality Table – Life Expectancy), ECF 28-3 at 26.[6] Thus, the mere fact that Plaintiff has other health conditions, standing alone, may not pass the test for "relevant evidence" under FRE 401.

Additionally, a significant risk of unfair prejudice and confusion of the issues would exist if the mere fact that Plaintiff has a myriad of health issues was presented to the jury without proper context. Plaintiff notes that if the jury were to "here [sic] evidence of Plaintiff's numerous severe medical conditions," it may "inflame their view of the Plaintiff and conflate his prior conditions with the serious injuries he suffered in the subject accident." Pl.'s Reply 4, ECF 39. The Court

---

[6] In the Joint Pretrial Order, ECF 31, Plaintiff's Proposed Jury Instructions renumbers this instruction as Jury Instruction No. 29, ECF 31-3 at 3, whereas Defendant's Proposed Jury Instructions renumbers the same as Jury Instruction No. 24, ECF 31-4 at 2.

agrees that this is a possibility, albeit one that may be ameliorated by an appropriate jury instruction.

Both parties have noticed numerous medical records as potential trial exhibits. Joint Pretrial Order 4–5, ECF 31. It is likely that these records contain multiple references to the conditions that Plaintiff seeks to exclude. Thus, the jury may unintentionally be made aware of Plaintiff's challenged diagnoses. Accordingly, the Court will reserve ruling on this aspect of the Motion until after hearing argument on the day of trial. The parties are tentatively instructed to omit reference to heart disease, end stage renal disease, sleep apnea, gastro-esophageal reflux disease, hypertension, hyperlipidemia, chronic sinusitis, hernia, depression, hepatitis C, pneumonia, and glaucoma in opening statements.

### 5. Any prior automobile accidents or claims for injury of the Plaintiff wherein he suffered head, neck, and back injuries.

Plaintiff seeks recovery for damages to Plaintiff's "lumbar spine" and "right knee." Joint Pretrial Order at 2, 6, ECF 31. Plaintiff admits in his deposition that at least three of his previous car accidents resulted in "injuries to [Plaintiff's] back and neck." Def.'s Opp'n, Ex. B at 4, ECF 34-2. While the fact that Plaintiff filed lawsuits related to these prior accidents is irrelevant, that these accidents occurred and resulted in injuries to Plaintiff are facts relevant to the issues at the heart of this case. Accordingly, Defendant is permitted to explore whether any claimed pain and injury to Plaintiff's back and neck resulted from the Subject Car Accident or from one of Plaintiff's earlier accidents.

### 6. Any evidence regarding Plaintiff's receipt of Social Security Disability Insurance Benefits.

"[E]vidence of collateral payments is admissible if there is evidence in the case of malingering or exaggeration of injury," or where the evidence may be probative of some other fact

9

of consequence such as judging the motivation of a plaintiff who claims they are unable to return work. *Kelch v. Mass Transit Administration*, 42 Md. App. 291, 296–97 (1979) (permitting limited questioning on the receipt of public benefits and collecting cases). Defendant claims that Plaintiff's receipt of disability benefits is relevant "as to Plaintiff's alleged loss of enjoyment of life, as it paints a more complete picture of what Plaintiff's life was like prior to the subject motor vehicle occurrence." Def.'s Opp'n 9, ECF 34. Defendant fails to explain *how* the receipt of benefits is probative of Plaintiff's quality of life prior to the accident. Plaintiff also makes no claim of lost wages due to the Subject Car Accident and has not alleged that the Subject Car Accident is preventing Plaintiff from returning to work. Accordingly, no testimony or other evidence will reference Plaintiff's receipt of disability benefits.

### III. Conclusion

Accordingly, for the reasons noted above, Plaintiff's Motion is **GRANTED** as to categories 3 and 6 and **DENIED** as to categories 1, 2, and 5. The Court will reserve ruling on the admissibility of category 4 evidence until the start of trial and after hearing additional argument. As noted, at the request of either party the Court may revisit these rulings at trial depending on the evidence elicited and the context in which the evidence is offered. A separate Order follows.

Dated: April 15, 2022 /s/
Brendan A. Hurson
United States Magistrate Judge